# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ANTHONY THROOP, | CASE NO. 12cv1870-LAB (NLS) |
| Petitioner, | **ORDER OVERRULING OBJECTIONS TO REPORT AND RECOMMENDATION;** |
| vs. | |
| | **ORDER ADOPTING REPORT AND RECOMMENDATION; AND** |
| RALPH M. DIAZ, Warden, et al., | |
| Respondents. | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Edward Anthony Throop was convicted in California state court of two counts of battery in connection with a prison riot, for which he received concurrent sentences of 25 years to life. He filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and (d), the petition was referred to Magistrate Judge Nita Stormes for a Report and Recommendation. Judge Stormes on February 21, 2014 issued a lengthy and detailed report and recommendation (the "R&R"), which recommended that the petition be denied.

After being granted extensions of time to file his objections, Throop filed a motion asking the Court to direct Judge Stormes to reissue her R&R. The Court denied this motion, and Throop filed a set of objections to the R&R (Docket no. 58, "Obj."), consisting of 66 pages of his own objections plus two appended declarations by other prisoners. He then

submitted three supplemental sets of objections, which the Court accepted for filing. The first supplemental objections (Docket no. 60, "First Supp.") consists of 36 pages of exhibits, while the second (Docket no. 62, "Second Supp.") consists of 13 unnumbered pages divided up into paragraphs. The third (Docket no. 64) amounts to three pages of discussion of Second Supp., including Throop's request that the Court construe them liberally.

**Legal Standards**

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). *See also* 28 U.S.C. § 636(b). If no objection is made, this de novo determination isn't required. *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003) (en banc). Because Thornton is proceeding pro se, the Court construes his pleadings liberally and affords him the benefit of any doubt. *See Karim-Panahi v. L.A. Police Dep't,* 839 F.2d 621, 623 (9th Cir.1988). But, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987).

Throop's objections are not set down in any coherent order, and are not always entirely clear. And, as discussed below, they are not always even related to the R&R. The Court has construed them liberally in an effort to identify the gist of his claims. Where an argument was open to multiple constructions, the Court has focused on those that were potentially valid or meritorious and giving him the benefit of the doubt. That being said, it is not the Court's role to serve as Throop's advocate by making arguments for him that he himself has not made. *See Jacobsen v. Filler*, 790 F.2d 1362, 1364-65 (9th Cir.1986). *See also Donahue v. United States*, 660 F.3d 523, 524 (1st Cir. 2011) ("The courts cannot assume the role of advocates and create arguments never made.") Among other things, this means the Court will not sift through the record or Throop's lodgments and create arguments for him.

/ / /

As part of its review, the Court consulted Throop's briefing filed in the California Supreme Court, both his brief on appeal (Lodgment 11), and his habeas petitions (Lodgments 19 and 21.) His brief on appeal is particularly helpful because it was drafted by his attorney and is clearer.  To exhaust his claims, as Respondent concedes he has done with respect to all but the first claim, Throop was required to present them to that court in such a way as to give the court a fair opportunity to understand and rule on them. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (explaining that exhaustion requires giving state courts a fair opportunity to correct the alleged violation of federal rights); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (holding that, to exhaust a habeas claim, a petitioner must "fairly present" his claim to state courts, including the state supreme court with powers of discretionary review).

To describe Throop's briefing before the state courts and this Court as voluminous is an understatement.   By way of example, his petition in the California Court of Appeals (Lodgment 15) is 77 pages long. His first petition to the California Supreme Court (Lodgment 19) was 334 pages long. His traverse in this Court (Docket no. 39) is 130 pages long. And, as noted, his objections to the R&R total 118 pages. These documents would have been much shorter had Throop omitted barred issues and claims, and not attempted to misuse the collateral review process as a means to retry his entire case in detail.  Such an approach brings with it the risk that a courts, however careful and diligent, will miss genuine and potentially meritorious issues buried in a mountain of meritless and procedurally-barred arguments. *See Buenoano v. Singletary*, 74 F.3d 1078, 1081 n.1 (11th Cir. 1996) (disapproving of habeas petitioners' practice of filing overly lengthy, conclusory briefing, and noting that courts are hard pressed to locate the real claims in such documents).

The Court's order of May 9, 2014 cautioned Throop against this approach, instructing him that he should not raise every critique he might have about R&R, but instead should point out significant errors that could affect the outcome of the case. (Docket no. 53, 1:20–2:2.) It is also apparent Throop's counsel on appeal told him something similar, because he complains about his appellate briefs having failed to raise all the points he told

his counsel to include. The Court has, of course, reviewed all the objections carefully, and presumes that the state courts reviewed Throop's briefing carefully as well.

It is also worth pointing out that in their various iterations, his claims and supporting arguments change from one brief to another, and often even within briefs, putting courts in the difficult position of trying to hit a moving target by discerning his real argument. To the extent Throop is presenting new arguments to this Court that weren't fairly presented to the California Supreme Court, this Court lacks power to grant relief.

Throop was also required to present his claims to the state courts in a context in which the claims would be considered on the merits. *Castille v. Peoples*, 489 U.S. 346, 351–52 (1989). Presenting them in some other context does not exhaust them.

Although Throop argues for an evidentiary hearing, such a hearing is not authorized for claims adjudicated on the merits in state court. *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1400–1401 (2011). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* Evidence presented for the first time in this Court would, therefore, have no bearing on the Court's review under § 2254(d)(1). *See id.* at 1400. As a result, evidentiary hearings pursuant to 28 U.S.C. § 2254(e)(2) are inapplicable to claims decided on the merits in State court. *Id.* at 1401.

The standards governing habeas relief are set forth in the R&R, and the Court does not repeat them here except as necessary for purposes of discussion.

**Grounds for Relief**

Throop's petition raises six general grounds for relief, some with sub-claims, and with a good deal of overlap. First, he argues he was denied a fair trial because the government interfered with his ability to present witnesses. Second, he says he was deprived of due process because of a juror's (Juror no. 2's) misconduct. Third, he argues his conviction occurred because of state court failures to create remedies for abuses of discretionary power. Fourth, he alleges his trial was infected by a pattern of outrageous government conduct. Fifth, he argues ineffective assistance of trial and appellate counsel. And sixth, he / / /

1  argues the evidence was insufficient to support his conviction. These arguments are outlined
2  in greater detail in the R&R.

3  Respondent argues that although the claims are timely, the first claim is procedurally
4  barred. Other than that, he argues Throop loses on the merits.

5  **Objections**

6  Although all three sets of documents Throop filed in response to the R&R are
7  identified as objections, much of their content does not consist of specific objections. Some
8  are highly generalized, blanket objections to the R&R as a whole. (*See, e.g.,* Obj. 2:1–11;
9  Second Supp. ¶¶ 6–11). Throop also makes generalized, unsupported, or conclusory
10 objections that the R&R is wrong and his arguments are right as to a particular claim or
11 issue, without adequately explaining the error. (*See, e.g.*, Obj. at 24:15–17 (arguing that the
12 R&R declined to address Throop's allegedly strong arguments in his traverse).) These aren't
13 specific written objections as contemplated by 28 U.S.C. § 636(b)(1)(C), and are not
14 sufficient to trigger de novo review. *See Scofield v. Ball*, 2012 WL 664769, at *1 (S.D.Cal.,
15 Feb. 29, 2012) (citing Fed. R. Civ. P. 72(b)(2)); *United States v. Midgette*, 478 F.3d 616, 621
16 (4th Cir. 2007)). In any case, the Court has already ruled on these generalized objections (*see*
17 Docket no. 51), and there is no reason to reconsider that ruling.

18 A large portion of the objections amounts simply to factual or procedural background
19 or clarification that doesn't disagree in any material way with the R&R. (*See, e.g.,* Obj.
20 2:13–3:7, 6:9–7:25; Second Supp. ¶¶ 3–4 13, 20, 26, 39, 40– 43, 46–47, 51, 72). Throop
21 also exerts a great deal of effort to correct what he identifies as citation or typographical
22 errors in the R&R or other documents, or omissions from the lodgments; he asserts that
23 these signal an overall flawed analysis, although he doesn't point to any particular material
24 errors. (*See* Obj. 3:8–6:7, 8:1–9:12; Second Supp., ¶¶ 6–9, 18.) It is clear Throop thinks the
25 R&R was poorly written and muddled the record, and that Judge Stormes' analysis of the
26 case was the product of her misunderstanding the record. But, even assuming these to be
27 valid criticisms, they do not by themselves affect Throop's eligibility for relief. To the extent
28 / / /

1   Throop has alleged errors he thinks affect his eligibility for relief, those objections are
2   discussed below.

3           "Federal courts lack jurisdiction to consider 'moot questions . . . or to declare principles
4   or rules of law which cannot affect the matter in issue in the case before it." *Forest*
5   *Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir.2006) (holding that federal courts lack
6   jurisdiction to decide moot questions or to declare principles or rules of law which cannot
7   affect the case before the court).  To the extent Throop's objections do not affect his eligibility
8   for relief, they are moot and are therefore **OVERRULED** as such.

9           Throop also argues, without providing detail, he is actually innocent, which is a new
10  and unexhausted claim.  (Second Supp., ¶¶ 45, 108.)  He is not arguing actual innocence
11  as a way of avoiding a time bar or other procedural obstacle, *see McQuiggin v. Perkins*, 133
12  S.Ct. 1924, 1928 (2013), because the claims in his petition are concededly timely and mostly
13  exhausted. That being said, he cannot at this point raise an unexhausted actual innocence
14  claim, particularly not without pointing to some new evidence. *See Schlup v. Delo*, 513 U.S.
15  298, 324 (1995) (explaining that an actual innocence claim must be supported by new
16  reliable evidence). *See also House v. Bell*, 547 U.S. 518, 555 (2006) (concluding that,
17  whatever burden a freestanding claim of innocence would require, it would higher than that
18  required in *Schlup* for a "gateway" innocence claim).  To the extent Throop's objection is that
19  he is actually innocent, this objection is **OVERRULED**.

20          **Claim One**

21          Throop argues he was deprived of his Sixth and Fourteenth Amendment rights
22  because the government interfered with his ability to obtain favorable witnesses and present
23  their testimony at trial. The R&R discusses this (R&R, 17:4–22:11) and Throop objects at
24  length. (*See* Obj.,   9:17–10:14, 10:15–16, 10:15–23, 11:15–18, 12:25–26, 13:16–17,
25  13:20–22; *see also id.* at 11:4–6, 11:18–20, 12:18–19 (factual recitation).) The claim focuses
26  on the testimony that Throop believes would have been offered by a fellow inmate and co-
27  defendant, George Garcia.
28  / / /

1    Although Throop raised this claim in filings with lower state courts, he raised it only

2    once before the California Supreme Court, in his second petition. (*See* Lodgment 21.)[1] This

3    is important, because in order to exhaust this or any claim, Throop was required to properly

4    present it to the California Supreme Court. *See Baldwin*, 541 U.S. at 29.  While arguments

5    contained in Throop's other filings, and other courts' decisions on his claims can be

6    illuminating, only claims <u>properly</u> presented to the California Supreme Court can serve as a

7    basis for federal habeas relief.

8    A guard, Lt. Hunt, had identified Throop and Garcia as having pepper-sprayed guards

9    during a prison uprising. Both Throop and Garcia were offered a plea deal, which only Garcia

10    accepted. Throop's trial counsel didn't subpoena Garcia, and Garcia didn't testify on Throop's

11    behalf. Throop believes this was because, while Garcia's plea agreement didn't forbid him

12    to testify, prosecutors intentionally induced Garcia not to testify. (Lodgment 21 at   3a[2]

13    (arguing that Throop's trial counsel should have alleviated Garcia's concerns about

14    testifying), 4 (alleging that prosecutors intentionally induced Garcia not to testify)).

15    Specifically, Throop believes Garcia was afraid that if he testified and incriminated himself,

16    the prosecution might renege on its plea deal. (*Id.* at 4.) Someone,[3] he says, advised Garcia

17    / / /

18    / / /

_____

19

20    [1] Even if the Court were to find that Throop, somewhere in an earlier petition, had raised this claim, it would still be denied. Earlier claims were denied on the merits. Under 28

21    U.S.C. § 2254(d)(1), the Court can grant habeas relief only if the state court's decision was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the U.S. Supreme Court. While lower federal courts and some state courts

22    have held that so-called "no-testimony" clauses in a codefendant's plea agreement violate a defendant's right to compulsory process, the Court is unable to find any holding by the U.S. Supreme Court to that effect.  *See, e.g.,  Maples v. Stegall*, 427 F.3d 1020, 1033–34 (6th Cir.

23    2005) (concluding, on the basis of lower courts' rulings, that a plea condition preventing a codefendant from testifying on behalf of a defendant  "may have violated [that defendant's]

24    right to compulsory process"); *State v. Sanchez-Equihua*, 235 Ariz. 54, 326 P.3d 321, 325 (Ariz. App. Div. 2, 2014) comparing the law of various jurisdictions to conclude that "no-

25    testimony" clauses in a codefendant's plea agreement violates the defendant's due process rights).

26

27    [2] The pages are not continuously numbered. Page 3a is an appendix to page 3, labeled "Ground 1, Continued:" and is duplicated on the back of page 4.

28

[3] Assuming this happened, it was likely Garcia's own attorney who gave this advice.

to stand on his Fifth Amendment privilege if called to testify. (*Id.*) Allegedly, prosecutors had learned that Garcia's testimony would have exculpated Throop. (*Id.* at 4a, 4b[4].)

Throop's declaration in support of his argument (Lodgment 21, Ex. F[5]) tells a somewhat different story. In it, he says Garcia's plea agreement didn't prevent him from testifying, but that Garcia became reluctant after entering into it, and Throop believes this was because Garcia was afraid of what prosecutors would do to him. (*Id.*, ¶¶ 5, 8, 12, 18.) He says he doesn't know what Garcia's testimony would have been except that it would have exculpated him without inculpating Garcia. (*Id.*, ¶¶ 6, 11, 12.)

This was rejected with a citation to *In re Clark*, 5 Cal. 4th 750, 767–69 (1993), *People v. Duvall*, 9 Cal. 4th 464, 474 (1995), and *In re Swain*, 34 Cal.2d 300, 304 (1949). The pinpoint citations stand  for various grounds: *Clark*—successive petitions; *Duvall* and *Swain* — failure to plead facts with particularity, so as to make out a prima facie case. In other words, the pinpoint *Clarke* citation shows the court found Throop could have presented this claim in his earlier petition but failed to do so. This amounts to procedural default, and Respondent has made his case that denial of this claim rests on an independent and adequate state law ground. *See  Bennett v. Mueller,* 322 F.3d 573, 586 (9th Cir. 2003). Throop's objections don't address this, but treat this as pertaining to the petition's timeliness (Obj. at 9:17–10:14), which is wrong. Because Throop hasn't presented any argument evidence, specific allegations, or anything else that would draw the adequacy of this state ground into question, he hasn't met his burden under *Bennett* and the claim is procedurally defaulted and unexhausted.

On the merits, the California Supreme Court's decision was also reasonable. Throop's own trial counsel didn't subpoena or call Garcia as a witness, and Throop wasn't able to say what Garcia's testimony would have been. He also asserts that Garcia's plea agreement didn't forbid him from testifying at Throop's trial, but that Garcia was reluctant to testify because he might incriminate himself and suffer the consequences. No provisions of the plea

---

[4] These are appendices to page 4, labeled "Ground 2, Continuation."

[5] The exhibits to this lodgment are not separately numbered or labeled.

1    agreement that might have prevented Garcia from testifying are alleged.  The threadbare

2    allegations don't make out a prima facie case. If anything, they suggest that Garcia was

3    acting in his own self-interest and not at prosecutors' behest. The California Court of

4    Appeals' decision, which is the last reasoned order, agrees with this.

5        Throop spends several pages objecting that this claim is timely (Obj. at 10:15–12:23),

6    but that isn't at issue; Respondent has conceded that it is timely. The R&R explained

7    procedural default, and the shifting of burdens. (R&R, 15:8–17:2.)

8        Throop's objections argue that Garcia has now become available as a witness, and

9    attaches Garcia's declaration to his objections. (Docket no. 58 at 69–71.) Even if the Court

10   could consider this, it would not help Throop, primarily because it doesn't exculpate him. The

11   only thing Garcia has to say about the disturbance is that he (Garcia) was far away from the

12   place where the pepper spray incident occurred, and also that pepper spray was never taken

13   from guards. (*Id.*, ¶¶ 10–14.) This is not persuasive, because it contradicts Garcia's own

14   guilty plea;[6] because it does not square with Throop's declaration;[7] and because, at most,

15   it would show some details of the prosecution's theory (such as where the prisoners obtained

16   the pepper spray) were wrong. Most of the declaration makes allegations of various kinds

17   of misconduct against prison personnel and prosecutors and has nothing to do with what

18   Garcia would have said on the stand.

19       **Claim Two**

20       This claim concerns a juror who, until trial was underway, failed to reveal that he was

21   the cousin of a district attorney who worked in a different county and had no connection with

22   Throop's trial. The trial court did not remove the juror, and Throop argues this entitles him

23

24       [6] The contents of the plea agreement, including any factual basis for the plea, is unavailable. Garcia says he destroyed his copy. (*Id.*, ¶ 59.) As discussed, Garcia and Throop

25   disagree about the effect of the plea agreement; Garcia thought it prohibited him from testifying in Throop's favor, while Throop argued it did not. The Court isn't required to accept

26   either Throop's or Garcia's legal conclusions.

27       [7] *Compare id.*, ¶¶ 10–11 (implying that Garcia was 50 yards away from the pepper spraying incident and could not have been involved) *with* Lodgment 21, Ex. F, ¶ 6 (declaring

28   that Garcia and Throop planned that Garcia would testify that another inmate, not Throop, was involved in the incident).

to relief. He also argues that the juror was sleeping not only during jury selection, but during the trial itself. (Obj., 15:4–10, 16–18.) He believes his attorney was ineffective for failing to get this juror removed. (*Id.*, 15:19–21.) The voir dire of the juror and the state courts' reasoning is discussed at length in the R&R. (R&R 22:13–28:15.)

Throop gives his own recitation of the facts, interwoven with objections. (Obj. 13:24–17:6.) He concedes that the juror's failure to mention the relationship was unintentional (*id.*, 14:23–25), and focuses instead on prejudice. He argues that the nondisclosure prevented his counsel's intelligent exercise of a peremptory challenge, and is therefore to be presumed prejudicial *per se*. (*Id.*, 16:16–21, 17:3–6.) He argues that the state courts' holdings were an unreasonable assessment of the facts and contends that he has successfully rebutted them. (*Id.*, 16:13–28.)

Throop is wrong that a district attorney's relatives are automatically presumed to be biased. *See United States v. Martinez-Martinez*, 369 F.3d 1076, 1081–82 (9th Cir. 2004) (holding that a defendant bears the burden of showing that a juror is actually biased, and that the trial court erred in failing to remove the juror). On the record before it, the trial court could very easily have determined that the juror was not biased and did not need to be removed. The relationship does not appear to have been particularly close, and the juror's cousin was not involved in the case nor was he even employed in the same county. The juror's cousin was a D.A. in Riverside County, while Throop was tried in Imperial County. The two did not discuss the district attorney's work or the case, and the juror did not think his cousin's occupation would make any difference in his decision. The trial court thoroughly examined the juror and found no reason to believe the juror was biased or could not be fair. There is no authority that in these circumstances a juror is *per se* biased, and no basis for second-guessing the state courts' decision is presented here.

To show that his trial counsel's performance was constitutionally deficient, Throop must meet the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), namely that his counsel's performance fell below an object standard of reasonableness, and that he was prejudiced by it. This standard is doubly deferential, both to counsel's

12cv1870

performance and to the state courts' determinations. *Burt v. Titlow*, 134 S.Ct. 10, 13 (2013)*; Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 788 (2011). Here, neither prong of the *Strickland* standard is met, and the state courts' rejection of this claim was reasonable. The question of this juror's bias or misconduct was thoroughly explored by the state courts, which found no reason to believe the juror was biased or should have been removed, and in fact no reason appears in the record. The fact that Throop's counsel did not take on a losing battle does not render his performance deficient, and there is no showing that the juror's remaining on the jury made any difference anyway.

Turning to the claim that this juror slept throughout the trial, the amended petition does not argue that the juror did so. Rather, all he says is that the juror was "suspected of dozing." (Am. Pet. at 9.) Although violations of state law are not a basis for relief in this Court, it is worth noting that California law does not require removal of a juror for misconduct under these circumstances. *See People v. Bowers* (2001) 87 Cal.App.4th 722, 731, 104 Cal.Rptr.2d 726 (concluding a juror cannot be discharged for sleeping unless there is convincing proof the juror actually slept). Furthermore, a single juror's dozing during trial, even if that was what happened, does not *per se* violate federal rights. *See Knight v. McDonald*, 2013 WL 4479298, at *24–*25 (C.D.Cal., Aug. 16, 2013) (*citing, inter alia, Tanner v. United States*, 483 U.S. 107, 126–27 (1987); *United States v. Olano,* 62 F.3d 1180, 1189 (9th Cir. 1995); *United States v. Springfield*, 829 F.2d 860, 864 (9th Cir. 1987)). Trial judges have wide discretion in deciding how to deal with sleeping jurors. *Springfield* at 864.

It is also worth noting that Throop did not properly exhaust the "sleeping juror" claim in the state courts. Exhaustion would have required him to fairly present this claim in his petition for review to the California Supreme Court, but he did not do so. (*See generally* Lodgment 12.) Rather, he merely mentioned this in passing as part of his argument that he juror was biased. (*See id.* at 11, 13.)

**Claim Three**

The R&R aptly observes this claim is pled with "broad imprecision." Throop identifies this claim as arising from the denial of his rights as a pretrial detainee, and "prejudicial

custody" that he believes affected his right to a fair trial. This claim focuses, to the extent it can be said to have a focus, on the manner in which Throop was held in custody pending trial.

Throop's objections to the R&R's recommendations concerning this claim can be found in both his original objections and in his first supplemental objections. He objects to the R&R's disregarding of exhibits to the Traverse as immaterial. (Obj., 17:9–13.) He believes the R&R concedes he was never afforded a fair trial. (*Id.*, 9:4–5.) He objects to the R&R's determination that unsupported allegations of misconduct are insufficient, arguing that his attorney's refusal to corroborate his charges should not be held against him. (*Id.*, 19:16–17.)

His recitation of the facts says he and his co-defendant were harassed into changing their pleas and improperly contacted by alleged victims and witnesses. (Obj.,18:3–5.) He charges that his communications with his attorney were monitored. (*Id.*, 18:5–6.) (argument that the prison officials eavesdropped on his conversations with his attorney and read his legal mail); First Supp. 24–30 (inquiry concerning missing legal mail).) He claims his access to evidence was restricted. (*Id.*, 18:15–17.)  He argues that his photocopy privileges were interfered with. (*Id.*, 19:10–12.)

The claims Throop points out in his objections fail, in part, because they are unexhausted complaints about how the state correction system is operated. His allegations pertain to actions taken by prison officials, not prosecutors or anyone involved in the court system. Even if witnesses and victims (who were, in this case, prison officers) talked to him, there is no claim that they did so at the direction of prosecutors or that it had any effect on his case. In addition, prison officers may open legal mail to alleviate security concerns. *Nordstrom v. Ryan*,762 F.3d 903, 906 (9th Cir., 2014) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).  Doing so outside of an inmate's presence has been found by lower courts — but not the U.S. Supreme Court — in some circumstances to violate a prisoner's First Amendment rights. *See id.* at 909 and n.2. But if done without an improper purpose, it may not.   *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989) (negligent opening of

prisoner mail did not rise to the level of a constitutional violation). The state courts found Throop's allegations of a conspiracy among prison officials and prosecutors to be wholly conclusory, and this finding was reasonable. There are no factual allegations here connecting anything prison officials may have done with anything prosecutors did, or anything that happened at trial. More importantly, there were none in Throop's filings with the California Supreme Court.

In part, Throop's claims fail because he has shown no prejudice. While eavesdropping on attorney-client conversations is not allowed, *see* Cal. Penal Code § 636, it only rises to the level of a Sixth Amendment violation if prejudice is demonstrated. *See United States v. Hernandez*, 937 F.2d 1490, 1493 (9th Cir. 1991). Here, as noted, none was pointed out. Additionally, even assuming Throop was urged to change his plea, he did not do so. His ability to put on his case and bring an appeal were unaffected by disruption of his photocopying privileges or his ability to inspect evidence, because he was represented by counsel.

In short, while Throop may have a grievance against prison officers, there is no reason to believe it deprived him of a fair trial, and this does not support habeas relief.

**Claim Four**

Throop argues that a pattern of government misconduct and cumulative error infected the adjudicative process. He asserts that numerous error and abuses support his "totality of the circumstances" argument that he did not receive a fair trial. Many of the alleged errors and abuses are recycled from other portions of the petition and are adequately addressed in other sections of this order, or the R&R. It should be noted that the state courts rejected a number of these individual claims as procedurally defaulted, but rejected the cumulative error claim on the merits.

The R&R discussed the various problems Throop identified, and Throop in turn gave his own recitation of the facts as well as his objections, as follows:

- Preindictment delay. (*See* R&R 33:18-37:23; Obj. 21:11:–23).

- Intrusion into attorney-client relationship. (*See* R&R 37:25-39:19; Obj. 21:27-22:2, 22:9-10, 22:9-11 (recitation of facts) and 21:26-27, 22:6 (objections)).

- Failure to disclose exculpatory evidence. (*See* R&R 39:21-44:19; (Obj. 22:17–24:13:1-2, 23:7-15, 24:1-5, Second Supp. ¶¶ 27, 76, 78).

- Prosecutorial interference with defense witness availability. (*See* R&R 44:21-46:25; Obj. 24:15–25:16, Second Supp. ¶ 21).

- Inconsistent prosecutorial facts and theories at separate trials. (R&R 46:27-48:17; Obj. 25:18--26:23).

- Conviction based on false testimony. (R&R 48:19-49:24; Obj. 27:2–28:13.)

- Impermissibly suggestive identification procedures. (R&R 49:26-52:3; Obj. 28:15–30:13.)

- Jurors' viewing of Throop while shackled. (R&R 52:5-57:1; Obj., 30:15–32:12.)

- Cumulative effect of errors. (R&R 32:27–33:16, 57:3-16; Obj, 32:15–41:6.)

### Preindictment Delay

Throop objects that the state courts did not decide this issue on the merits, which he understands to mean a well-reasoned decision. (Obj. 21:6–10.) In fact, the California Court of Appeals denied all of Throop's claims regarding prosecutorial misconduct as procedurally defaulted. (Lodgment 16 (grouping all prosecutorial misconduct as claim 7, and denying it as procedurally defaulted.) While the order did not reach the merits as to this claim individually, it did reach the merits as to his claim of cumulative error, and found that all the alleged errors, taken together, failed to establish prejudice. While this is not a ruling on the prosecutorial misconduct claims, it effectively forecloses the possibility that any particular claim of error might have warranted relief. In a later order, the same court reached the merits of Throop's general prosecutorial misconduct claim. (Lodgment 18.) The fact that the R&R also discussed the merits and found Throop's claim meritless does not change the analysis.

Throop also objects that he did not raise any claims pertaining to delay of his trial, only delay of his indictment. (Obj., 21:14–16.) But, as the R&R points out, he did. (R&R, 36:9–37:9.) And in any event, the danger of unjust delays of indictment is that they may violate a defendant's due process rights by unfairly prejudicing his case at trial. *See United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985). Throop does not object to the substance of the R&R's findings or conclusions about preindictment delay, which the Court finds to be correct.

### Intrusion into Attorney-Client Relationship

The earlier discussion of this claim explains why it lacks merit. Throop's objection that the R&R fails to cite case law to refute his argument is a critique of the R&R, not a specific written objection to it; it does not show how or why the R&R is in error. This claim, like the previous claim, was procedurally defaulted, but the state court also addressed the merits of his cumulative error claim. (*See* Lodgment 16.) In his objections, Throop points to no material facts or law that has not been taken into consideration.

### *Brady v. Maryland* Violation

The exculpatory evidence Throop thinks should have been disclosed was some photographs of the riot, as well as clothing he wore during the riot, which had been held as evidence. The California Court of Appeals rejected this claim, like the previous two, as procedurally defaulted; the court also denied the cumulative error claim on the merits. (Lodgment 16.) The R&R engages in a merits analysis, explaining why the state courts' resolution of this claim was reasonable. While the R&R incorrectly reasons that inadvertent failure to disclose evidence does not amount to suppression, *see Strickler v. Greene*, 527 U.S. 263, 281–82 (1999), the Court concludes for other reasons the evidence was not suppressed. And the R&R's analysis of the materiality requirement is correct. Throop's objection does not explain the materiality of the evidence, within the meaning of *Brady v. Maryland*, 373 U.S. 83 (1963). *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (explaining materiality standard).

Throop believes the photographic evidence would have shown a guard missing his pepper spray cannister, which he in turn believes would have established that events did not happen the way witnesses said they did, and that the testimony of other guards was "delusional exaggerations." (Obj., 22:24–23:3, 23:20–24:5.) The non-appearance of a pepper spray cannister in a photograph would not satisfy the materiality standard, and the non-availability of his clothing for analysis has not been shown to be material either. Nor would the two combined be material, within the meaning of *Brady*. The state courts' rejection of this claim was reasonable.

Throop was acquitted on some of the battery charges against him. From this, he reasons that the jury believed the officers were lying and it was proved that Throop did not assault anybody. The R&R discusses Throop's characterization of the evidence and procedural history in the context of his false testimony claim, but at this point it is sufficient to note that his inferences are unwarranted. Acquittal can be based on any degree of reasonable doubt. There is no reason to suppose that a jury who acquitted him of some charges and convicted him of others agreed with his current assessment of the evidence. (*See* Lodgment 3 (Docket no. 22-30) at 2002:9–2004:16 (trial court's discussion of apparently inconsistent verdicts).)

Furthermore, Throop does not show that the evidence was suppressed. *See United States v. Bond*, 552 F.3d 1092, 1096 n.4 (9th Cir. 2009) (no suppression where the government provides the defense with the means of obtaining exculpatory evidence). Throop and another defendant, whose counsel worked at the same law firm, jointly hired an investigator, who provided them with video and photographic evidence. The investigator showed Throop this evidence. (Obj., 51:1–16.) Throop's counsel, and counsel for two other defendants also shared the same set of evidence, which included photographs.[8] (Am. Pet. at 24–25; Obj. at 50:22–28.) Throop or his counsel could have made copies, but failed to do so before those photographs were entered into evidence in the other defendant's trial and therefore became unavailable for copying or use.

Throop's counsel, having lost the photographs, then requested copies from the state. While most were produced, Throop believed some photographs were omitted and the photographic log falsified to cover up the omission. But this was apparently his own conclusion; his trial counsel told the court the question about the photographic logs had been explained. (Rptr's Transcr. on App. (Lodgment 3, Vol. 7 (Docket no. 22-18) at 200:15–17.)

/ / /

---

[8] It is unclear to what extent the photographs the investigator showed Throop were the same as those provided to counsel for all three defendants, although the briefing makes clear there was overlap. But regardless, it is clear both Throop and his counsel before trial were given access to the photographic evidence Throop believes would show his innocence.

In other words, Throop's counsel had all the photographs, but lost them by failing to make copies before another attorney — not the government — introduced them into evidence at another trial. Even supposing the government failed to replace all the lost photographs (a conclusion the record does not support), there was no suppression, and no *Brady* violation.

As for his clothing, Throop also knew it had been taken from him and bagged for possible evidentiary use, yet does not allege he or his counsel tried to obtain it.

### Interference with Witness Availability

This is essentially the same as Claim One, above. For the reasons discussed above, as well as in the R&R, this claim fails.

### Prosecution on Inconsistent Theories at Different Trials

The Supreme Court has never held that prosecution on inconsistent theories violates Due Process. See *Bradshaw v. Stumpf*, 545 U.S. 175, 190 (2005) ("This Court has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories.") (Thomas, J., concurring). Throop's citation of lower courts' rulings does nothing to suggest otherwise.

### Use of False Testimony

Throop raises a claim under *Napue v. People of State of Illinois*, 360 U.S. 264, 269 (1959), which held that prosecutors violate Due Process by obtaining a conviction through the use of evidence they know to be false. He argues the testimony of Lt. Hunt was false.

Lt. Hunt testified that two officers lost their equipment during the riot, allowing Throop to gain control of their pepper spray and use it on guards. Although Throop asserts that the testimony of was false, and cites his acquittal on three counts as evidence of this, there is no evidence prosecutors knew it to be false. Throop's theory is that no officers ever lost control of their pepper spray and that the pepper spraying of guards was due to "friendly fire" from other guards. But the corroborating testimony of other witnesses who said Throop and other prisoners used pepper spray would have given prosecutors reason to believe Lt. Hunt's testimony. And in any event, which officer the pepper spray was obtained from is immaterial.

### Use of Suggestive Identification

Six officers identified Throop as one of the inmates who pepper sprayed guards. Throop's theory is that their testimony was coached or wholly manufactured.

He argues that because officers were allowed to discuss their incident reports with each other before submitting them, their testimony was tainted. The amended petition identifies this as being a suggestive identification. (Am. Compl., 21–22.) But the petition also says his attorney questioned them about this. He also points to the fact that the witnesses were unable to identify what he was wearing that day, and argues that he can point to the testimony of other inmates that prison officers make a practice of collaborating in order to manufacture testimony.

The R&R points out that two of the eyewitnesses knew Throop before, and their identification of him, even if made under the circumstances Throop posits, is not unreliable. The fact that Throop's attorney questioned witnesses about their discussions tends to mitigate any prejudice, because the jury was aware of the possibility the testimony might have been coached. Throop also cites his acquittal on three counts, which he believes shows that the jury thought the witnesses were lying. In fact, it establishes only that the jury had at least some doubt about his guilt.  It also shows that the jury was not, as he argues, steamrolled by coached testimony.

### Jurors' Viewing of Throop in Shackles

Throop wore street clothes during the trial, and in the courtroom his leg shackles were hidden underneath the table where he sat. But was also shackled while transported to and from the courthouse, and was seen more than once by some jurors outside the courtroom. Certain courtroom practices have the effect of undermining the presumption of innocence, and the Supreme Court has held that they violate Due Process. *See, e.g., Deck v. Missouri*, 544 U.S. 622, 630 (2005) (holding that compelling a defendant, without adequate justification, to appear visibly shackled at trial violates Due Process); *Estelle v. Williams*, 425 U.S. 501, 504–05 (1976) (holding that compelling a defendant to appear at trial in jail uniform violates due process).

The Supreme Court has never held that shackling a prisoner for transport to and from the courtroom violates Due Process. In such cases, as here, jurors have sometimes seen prisoners shackled on the way to or from the courtroom, and in such cases lower courts have required that the defendant establish prejudice. *See, e.g., Ghent v. Woodford,* 279 F.3d 1121, 1132 (9th Cir. 2002); *Rhoden v. Rowland*, 172 F.3d 633, 636 (9th Cir. 1999)*; United States v. Hallilburton*, 870 F.2d 557, 561–62 (9th Cir. 1989); *Wilson v. McCarthy*, 770 F.2d 1482, 1486 (9th Cir. 1985).  The California Court of Appeals noted this claim as part of the general claim of prosecutorial misconduct, and found no prejudicial error. (Lodgment 16.)

Throop's objections claim that the jury was allowed to see him daily, and that this was part of a plot by guards. (Obj. at 31.) In his petition to the California Supreme Court, he described it as occurring multiple times per week, and says he was seen by at least four jurors during this time. (Lodgment 19 at 27 (Docket no. 22-58 at 28).) He never mentioned to the California Supreme Court how long he was seen in this condition, or any facts that would suggest he was recognized, or that it had any effect on his trial. The record shows that on one occasion when a juror caught a glimpse of him, one of the guards escorting him took steps to block the juror's view.  In his briefing to this Court — but not to the California Supreme Court — he cited an incident where one juror greeted him in the hall while he was shackled, and another where two jurors seated in the jury box appeared to be talking and one motioned as if demonstrating the shackling process. (Traverse at 48.) Even assuming Throop's interpretation of this incident is correct (and the juror was not, for example, discussing how he saw some other prisoner shackled), Throop's theory was that the first juror was explaining to the second how it was that Throop injured himself falling down some stairs. (Am. Pet., 23 n.14.)

Arguments not presented to the state courts are not exhausted, and in any case Throop has not demonstrated prejudice. Even accepting all of his allegations as true, most of the jurors never saw him shackled and the entire jury already knew he was a prisoner. Numerous courts have held in similar cases that prejudice was not established, where jurors already knew a litigant was an inmate. *See, e.g., Deck*, 544 U.S. at 652 n.18 (Thomas, J.,

dissenting) (citing cases). While *Deck* makes clear a defendant cannot appear visibly shackled in front of a jury in the absence of demonstrated need to do so, the fact that it allows visible shackling when need has been demonstrated means that a fair trial is still possible. Lower courts, for example, have denied relief where jurors briefly saw defendants shackled outside the courtroom. *See Ghent*, 279 F.3d at 1133, *Castillo v. Stainer*, 983 F.2d 145, 147–48 (9ᵗʰ Cir. 1992).  The state courts' resolution of this claim was reasonable.

**Cumulative Effect of Errors**

In the section of his objections dealing with the R&R's recommended rejection of this claim, Throop re-argues the previous claims.  The California Court of Appeals denied this claim on the merits (Lodgment 16), and for reasons discussed above, its determination was reasonable.

Some of the arguments in Throop's objections were never presented to the California Supreme Court, and that court never had a chance to consider them. And individually, most of the alleged errors were not errors at all. Those that may have involved some error (even if not of a constitutional magnitude) were reasonably determined to be not prejudicial. The R&R determined that there were no constitutional violations to cumulate, and after considering Throop's objections and conducting a de novo review, the Court reaches the same conclusion.

**Claim Five**

The state courts rejected Throop's claim for ineffective assistance of trial and appellate counsel on the merits. As noted above, this Court's review of their decision must be "doubly deferential." *Burt*, 134 S.Ct. at 13; *Harrington*, 131 S.Ct. at 788.  The starting point for the Court's analysis is the standard for the effectiveness of criminal defense counsel set forth in *Strickland*, 466 U.S. 668. This by itself is a deferential standard. *Id.* at 691 (requiring "a heavy measure of deference to counsel's judgments" when deciding whether they were reasonable). When combined with the standard of review under 28 U.S.C. § 2254(d), the question for the Court becomes whether any court could reasonably have found *Strickland*'s deferential standard met.

Throop's objections include a great deal of new information. But the only exhausted arguments concerning his trial counsel are that he was ineffective for failing to challenge the juror whose cousin was a district attorney (Lodgment 5 at 16–17; Lodgment 10 at 19–20; Lodgment 11 at 11–13; Lodgment 12), and for having a conflict of interest (Docket no. 16). The only exhausted argument concerning his appellate counsel was that his counsel should have ensured the transcript was accurate and raised all viable issues, not just some. (Lodgment 19 at 4–5, Lodgment 16.)

The issue concerning the juror was discussed above, and the Court finds his counsel acted reasonably. *A fortiori*, the state courts' determination that Throop's counsel acted competently was also reasonable.

The alleged conflict of interest arose because Throop's trial counsel worked at the same firm as another attorney. The second attorney represented another inmate involved in the riot, who was being tried separately. The two shared one investigator and, according to Throop, was provided with a single set of evidence. Even if the two defendants' interests diverged somewhat, they were not adverse. This does not amount to a disqualifying or prejudicial conflict of interest, and certainly not to ineffective assistance of counsel.

Throop speculates that his trial counsel might have attempted to curry favor with witnesses in an unrelated criminal case, by not questioning them as thoroughly in Throop's case. He also believes that this other case caused his counsel to be stressed and worried, and thus less effective. The evidence he cites was that his counsel seemed distracted and frustrated, and sometimes incorrectly mixed up the cases or referred to him by the other defendant's name. (Am. Pet. at 25.) This does not amount to ineffective assistance of counsel. In his objections, Throop adds more facts, providing a critique of his trial counsel's supposed failures to properly cross-examine a witness, and to present evidence he predicted in his opening statement.   The critique of his counsel's examination of witnesses amounts to a  difference of opinion  about how best  to try the case,  and Throop  concedes that his

/ / /

/ / /

counsel was unable to present the predicted evidence because two witnesses became unavailable.[9]

Throop's claim regarding his appellate counsel's failure to maintain an accurate transcript (Am. Pet. at 28–29) fails because he does not show prejudice. The only claims he mentions as being affected are the ones he raised, which the state court (and this Court) later rejected. Likewise, his appellate counsel was not ineffective for strategically concentrating on Throop's strongest claims, and abandoning the "long shots." *See Jones v. Barnes*, 463 U.S. 745, 752 (1983); *Smith v. Murray*, 477 U.S. 527, 536 (1986). Failure to raise weak or meritless arguments is not ineffective assistance at all. *Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000); *Pollard v. White*, 119 F.3d 1430, 1437 (9th Cir. 1997).

In short, Throop has not shown, even now, that his trial or appellate counsel was ineffective. The state courts' rejection of these claims was reasonable.

**Claim Six**

The Due Process clause permits a defendant to be convicted only on proof beyond every reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364 (1970). Throop's objections also attempt to raise an unexhausted "actual innocence" claim based on what he claims is new evidence, but he cites none. The standard applicable to his claim is set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Throop's objections argue he was convicted on the basis of insufficient evidence. He again cites the acquittal on three charges as evidence that evidence for the remaining charges must have been insufficient. This argument fails for reasons explained above. He also raises the "false evidence" argument discussed above, contending that Lt. Hunt lied and he therefore could not have obtained the pepper spray he was accused of using on the

/ / /

---

[9] Strangely enough, although elsewhere in his briefing Throop argues that the testimony offered against him was clearly proved to have been fabricated, in this section he faults his counsel for failing to put on <u>any</u> evidence showing the testimony was fabricated. (Obj., 48:8–16.)

1    guards. This argument fails as well, for reasons explained above. The evidence presented

2    at trial was sufficient to satisfy the *Jackson* standard.

3         In this section of his objections, Throop also raises various new and unexhausted

4    attacks on his conviction, including overbreadth of the statute under which he was convicted,

5    none of which are cognizable here.

6    **Conclusion and Order**

7         Because of the volume and density of the briefing, the Court has addressed

8    specifically the key points of Throop's claims and objections. That being said, the Court has

9    reviewed both the R&R and Throop's objections to it, and has made a de novo of all

10   recommendations he specifically objected to. To the extent state courts ruled on Throop's

11   claims, their decisions were reasonable and entitled to deference.

12        This order's analysis supplements, and in some cases modifies the R&R. Throop's

13   objections are **OVERRULED**, and the R&R, as modified in this order, is **ADOPTED**. The

14   petition is **DENIED**, and a certificate of appealability is **DENIED** as well. All pending dates are

15   **VACATED** and all pending motions or applications are **DENIED AS MOOT**.

16

17        **IT IS SO ORDERED**.

18   DATED:  February 26, 2015

19

20   **HONORABLE LARRY ALAN BURNS**
     United States District Judge

21

22

23

24

25

26

27

28