1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

10

11 | EDWARD ANTHONY THROOP,

12 |              Petitioner,

    vs.

13 | RALPH M. DIAZ, Warden, et al.,

14 |              Respondents.

15

16

CASE NO. 12cv1870-LAB (NLS)

**ORDER DENYING MOTION TO
ALTER OR AMEND JUDGMENT**

17    On February 26, 2014, the Court issued an order (the "Order") denying Edward
18 Throop's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Throop then filed
19 a 21-page motion (the "Motion") pursuant to Fed. R. Civ. P. 59, seeking reconsideration of
20 the denial.

21    "A motion for reconsideration under Rule 59(e) 'should not be granted, absent highly
22 unusual circumstances, unless the district court is presented with newly discovered evidence,
23 committed *clear error*, or if there is an intervening change in the controlling law.'" *McDowell*
24 *v. Calderon*, 197 F.3d 1253, 1255 (9th Cir.1999) (per curiam) (en banc) (quoting *389 Orange*
25 *St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999)). Throop's Motion shows none of
26 these. Instead, it misrepresents the record, complains about the complexity of the case, and
27 re-argues his claims. This order addresses the Motion's principal arguments.

28 / / /

**Discussion**

**General Complaints**

The Motion first claims that the Court struck some of his exhibits, and openly acknowledged that it had ignored his arguments. (Motion at 2:3–6.)  This is manifestly inaccurate. The Court accepted all of Throop's exhibits, and discussed them all in its order denying the petition. Contrary to Throop's assertions, the Court did not intentionally or openly ignore any of his arguments, and did not state that it was doing so. In various other places, Throop makes baseless accusations that opposing counsel, the magistrate judge, and the Court have deliberately misrepresented and distorted the record.

The Motion then reiterates Throop's complaint, which was raised and rejected earlier in the case, that the magistrate judge's report and recommendation (the "R&R") was poorly written and difficult to understand. Throop also maintains that because of the length and amount of detail in Respondent's answer and in the R&R, he was forced to file extremely lengthy briefs in order to address all the points they made.  This theme is repeated throughout the Motion. It is Throop rather than everyone else who is responsible for the length of briefing and orders in this case. His initiating petition is 43 pages long, and his traverse is 130 pages long. The fact that the answer and R&R are 40 and 70 pages, respectively, is not the fault of Respondent or the magistrate judge. But more importantly, none of this affects the outcome of this case.

The Motion then raises arguments about certain exhibits pertaining to his habeas petition in California superior court (Motion at 4:1–5:20), none of which have any bearing on the outcome of this case.

**Exhaustion**

The Motion argues that the Court applied incorrect standards of review and sua sponte raised exhaustion defenses never raised by Respondent. (Motion at 5:24–6:4.) Throop argues he should have been given advance notice that exhaustion was at issue, so that he could  respond to it.  But he does not say  what he would have said,  had he been / / /

1   notified in advance, nor does he attempt to show that he actually exhausted any claim the
2   Court identified as unexhausted.

3         Throop is also wrong that the Court may not *sua sponte* raise the issue of exhaustion.
4   Federal courts are not <u>obligated</u> to raise non-jurisdictional threshold issues such as
5   exhaustion, but <u>may</u> do so. *Day v. McDonough*, 547 U.S. 198, 205–06 (2006). Throop is also
6   mistaken in believing he is entitled to notice and an opportunity to be heard before the Court
7   mentions, discusses, or relies on non-exhaustion. All that *Day* requires is that a court give
8   parties a fair opportunity to be heard before dismissing a petition based on a threshold issue,
9   and that they are not significantly prejudiced by delayed focus on the issue. *Id.* at 210–11.
10  The Court is not forbidden to discuss non-exhaustion when addressing proposed new claims,
11  or point out non-exhaustion as an alternate basis for denial of a petition. Courts may, and do,
12  explain alternate bases for their rulings. *Carey v. Saffold*, 536 U.S. 214, 225–26 (2002).  In
13  fact, the Court only discussed exhaustion in three contexts, and never as the primary basis
14  for denying any claim.

15        First, Throop's objections to the R&R attempted, or appeared to be attempting, to
16  raise several new claims never presented to the California Supreme Court or even in his
17  petition or amended petition in this Court. The Order pointed out that Throop's claims and
18  arguments had repeatedly changed and were not always consistent even within the same
19  pleading, so it was sometimes difficult for courts and opposing counsel to know what his real
20  claims were.   The possible new claims included what appeared to be a new "actual
21  innocence" claim (*see* Order at 4:3–7, 6:9–19); complaints about the prison mail system (*id.*
22  at 12:18–23); new claims about his trial counsel (*id.* at 21:1–7); a second "actual innocence"
23  claim (*id.* at 22:14–19), new arguments that he was intentionally shown in shackles to jurors,
24  and that jurors pointed at him and were talking about him (*id.* at 19:9–26);[1] a claim that the
25  statute under which he was convicted was overbroad (*id.* at 23:3–5); and various other new
26  / / /

27  ─────────────────

28        [1] The Court went on to explain why, in any event, this claim lacked merit. (Order at
    19:25–20:6.)

1  claims.[2] The Court's order pointed out that these claims were new as a way of explaining why

2  Respondent had not argued against them earlier, and also to explain why giving Throop

3  leave to amend his petition to add these claims would not change the outcome.

4      The Court identified non-exhaustion as an alternative basis for rejecting Throop's

5  claim pertaining to a juror who, he appeared to allege, slept during the trial. The Order noted

6  non-exhaustion as an alternative basis for the Court's ruling. (*Id.* at 11:21–25) It should

7  further be noted that in his Motion, Throop made clear he did not intend to raise any such

8  claim. (Motion at 17:1–16.)

9      The Court's analysis also noted that Respondent conceded that Throop had properly

10  exhausted all but his first claim for relief (*Id.* at 3:1–11), and addressed both non-exhaustion

11  and procedural default as bases for denying the claim. (*Id.* at 6:21–7:7, 8:18–21, 9:5–7.) To

12  be clear, exhaustion requires that a claim have been "fairly presented" to state courts, and

13  Throop's first claim was not properly presented to the California Supreme Court. But such

14  claims are treated as technically exhausted if the state courts would now find them

15  procedurally barred, as is the case here. *See Gulbrandson*, 738 F.3d at 992.  In other words,

16  Throop's failure to properly present his first claim to the California Supreme Court meant he

17  never exhausted it, although it is treated as procedurally barred rather than unexhausted. *Id.*

18  The Court's rejection of this claim depended primarily on the procedural bar which, it should

19  be noted, Throop has never addressed. The Court's denial also pointed out that even if the

20  claim were not procedurally barred, it would fail on the merits. (Order at 8:22–9:4.)

21      The Motion additionally argues that Throop did exhaust every claim his objections

22  raised (Motion at 6:26–8:5) which the order denying relief rejected. It also argues that the

23  standards the Court cited are wrong, and that the Court was required to construe his

24  _____

25      [2] Some of these new claims are entirely new, while others are new versions of older
   claims bolstered by many new facts that the state courts never had an opportunity to
26  consider. *See Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008) (holding that, to exhaust
   the factual basis for a habeas claim, the petitioner must provide the state court with "all of
27  the facts necessary" to support the federal claim). While some additional support or
   explanation are allowed, the "operative facts" must have been presented to the state courts,
28  and a new factual basis for relief amounts to a new or different claim. *Gulbrandson v. Ryan*,
   738 F.3d 976, 992 (9th Cir. 2013).

pleadings to state courts "generously" to see if they adequately raised federal claims. In fact, the standards the Court cited — *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) — do control. The Motion provides no basis for reconsideration.

### Evidentiary Hearing and New Evidence

The Motion next argues that the Court abused its discretion by refusing his requests to amend and expand the record, or to allow him to introduce newly-discovered evidence. (Motion at 8:23–11:27.) Throop, apparently latching onto Justice Sotomayor's dissent in *Cullen v. Pinholster*, 131 S.Ct. 1388, 1413 (2011) (or similar reasoning), argues that because of his indigence and the fact he was incarcerated, it was impossible for him to develop the factual basis for his claims in state court. This is a non-starter. First, the majority in *Cullen* is against him. Second Throop was represented by counsel in state court, through his appeal; his indigence and incarceration played no role in his failure to develop the record. Third, Throop claims the new evidence regarding a policy of eavesdropping was obtained by an attorney in a different case. But the fact that Throop didn't know about it earlier doesn't mean it could not have been discovered, with the exercise of due diligence. *See* § 2254(e)(2)(A)(ii). Not even the *Cullen* dissenters thought that dilatory habeas petitioners ought to be given evidentiary hearings or allowed to supplement the record on review. And finally, the new evidence Throop identifies pertains to a claim that prison officials eavesdropped on his conversations with his attorney, and this claim was found meritless. (*See* Order at 12:19–23, 13:3–16.)

### Actual Innocence

The Motion next re-raises Throop's "actual innocence" claim, and argues that Respondent caused the procedural default and should be estopped from raising it . (Motion at 12:1–15:25.) There is no basis for a finding of actual innocence here. And any claims Throop had regarding compliance with state habeas requirements should have been raised before the state courts. Because he failed to argue those issues successfully, the Court must / / /

1    and does accept California Supreme Court's reasonable determination that his petition was

2    successive and inadequately pled.

3         **Juror Bias**

4         The Motion then makes a new argument regarding one of Throop's juror bias claims.

5    After trial began, one juror informed the court that he had forgotten his cousin was a district

6    attorney. The judge questioned the juror and determined that the juror's nondisclosure had

7    been inadvertent and there was no bias. The two were not particularly close; furthermore,

8    the juror's cousin worked in Riverside County and had nothing to do with Throop's trial, which

9    was held in Imperial County. Throop argues that the state transcript showed the district

10   attorney in fact worked in Imperial County and was supervising the district attorneys over his

11   trial. The record confirms Throop's argument is wrong.  At trial, the juror identified his cousin

12   as a district attorney in Riverside County, not Imperial County, and Throop's own attorney

13   on appeal repeated this information. (*See* Lodgment 5 (Docket no. 22-46) at 7–12, Lodgment

14   11 (Docket no. 22-52) at 4–6.)

15        Even if, as Throop now claims, this attorney now works in Imperial County, it made

16   no difference to the outcome. What is important is where he worked at the time of Throop's

17   trial, where the juror thought he worked, and what evidence was before the trial court

18   regarding possible bias.

19        **Sleeping Juror**

20        The Motion next discusses a claim pertaining to a sleeping juror, although it is difficult

21   to make out what error, if any, Throop thinks the Court made, or indeed what his quarrel with

22   the Court's order is. (Mot. at 17:1–16.) In this section, Throop chides the Court for, in his

23   opinion, deliberately twisting the facts and playing games with him. He denies ever having

24   made the allegation that this juror was sleeping during trial or after voir dire.[3] But the Court

25   pointed this out, agreeing with Throop that he never claimed the juror was sleeping during

26   trial. (*See* Order at 11:9–11 (pointing out that the amended petition did not argue the juror

27

28        [3] The Amended Petition includes a section titled "Sleeping" which discusses the possibility of the juror's having fallen asleep during voir dire and mentions Throop's inability to ask his attorney to lodge an objection to this "misconduct." (Am. Pet. at 9.)

slept through the trial,  and that it merely said  he was "suspected of dozing").  And in any case, the fact that a juror did not fall asleep during trial is not a basis for reconsideration or relief.

### *Brady v. Maryland* **Claim**

Throop raised a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), and the Motion next objects to the Order's treatment of this claim. The Motion argues that the photographs that the state failed to produce pertained to Throop's physical location in a prison yard during a riot, and disclaims any probative value they might have in showing that prison guards did not lose control of their pepper spray canisters. (Motion at 17:17–19:20.) Throop's objection to the R&R, however, did not mention their value in showing his position in the yard.  (*See* Obj. to R&R (Docket no. 58) at 22:16–24:13.) Instead, it repeatedly and at length emphasized their value as showing that guards had not lost their pepper spray canisters during the riot, as they testified. (*Id.* at 22:23–23:5; 23:19–24:5.) The Order's failure to address arguments Throop did not make in his objections was not error, and does not support reconsideration.

Furthermore, Throop failed to show that the evidence was suppressed.  Rather, the record shows the photographs were made unavailable through the actions of Throop's counsel and another attorney, and later replaced by the government. (Order at 16:10–17:5.) The trial court and Throop's own counsel concluded that after the government replaced the photographs, none were missing. (*See* Order at 16:22–22 (citing transcript).) Throop's current argument that some in fact were still missing does not entitled him to relief.

### **Shackling**

The Motion next re-argues Throop's claim regarding the jurors' having viewed him in shackles. (Motion at 19:22–20:16.) It selectively cites facts both in the record and contradicted by the record, and argues that the Court should have analyzed the claim on that basis alone. This provides no basis for reconsideration.

/ / /

/ / /

**Certificate of Appealability**

Finally, the Motion argues that a certificate of appealability should have issued, and gives as issues several questions that do not accurately reflect the Court's ruling. For reasons explained in the Order, and clarified in this order, a certificate of appealability was properly denied.

**Conclusion and Order**

In short, the Motion identifies no basis for reconsideration. It fails to meet the standard for Rule 59 motions, and is **DENIED**.


**IT IS SO ORDERED**.

DATED: April 1, 2015

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

- 8 -